**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT WILLIAM FRAZIER,** | } | |
| | } | |
| **Petitioner,** | } | |
| | } | |
| **v.** | } | **Case No.:  5:15-cv-08012-RDP** |
| | } | **(5:13-cr-00509-RDP-HGD)** |
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **Respondent.** | } | |

**MEMORANDUM OPINION**

This case is before the court on Petitioner Robert William Frazier's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. (Civil Docket, Doc. # 1).[1] The Government has responded to the Section 2255 Motion (*Id.*, Doc. # 7), and Petitioner has replied (*Id.*, Doc. # 10). Petitioner has amended his motion to vacate to add one claim. (*Id.*, Docs. # 11, 12). The court granted the Government an opportunity to respond to the amendment, but it did not respond. (*Id.*, Doc. # 13).

**I.      Background**

Petitioner was indicted on six charges of producing child pornography (Counts One through Six), one count of transporting child pornography (Count Seven), one count of receiving child pornography (Count Eight), and two counts of possessing and accessing child pornography with intent to view (Counts Nine and Ten). (Criminal Docket, Doc. # 1). On February 20, 2014, Petitioner appeared with his attorney, Robert T. Ray, for a change of plea hearing and entered a

---

[1]  This memorandum opinion and the accompanying order refer to Case No. 5:15-cv-08012-RDP as the "Civil Docket" and Case No. 5:13-cr-00509-RDP-HGD as the "Criminal Docket."

plea of guilty to Counts Seven, Eight, and Ten. (*Id.*, Doc. # 29 at 33-34). At the plea hearing,

Petitioner agreed the following facts were correct and that he did the following things:

> THE COURT: All right. Mr. Fortune, I do think in this case we are going to go forward with a presentation as to a factual basis. So I'm going to ask you to describe for me the facts you would expect to prove at trial if this case were to go to trial. And, Mr. Frazier, I want you to listen carefully to what the Assistant U.S. Attorney is about to outline for me. I'm going to ask you some questions about his presentation once he finishes. All right?

> THE DEFENDANT: Yes, sir.

> MR. FORTUNE: Your Honor, again, the factual basis is as enumerated on pages 3 through 8. The United States would be prepared to prove the following facts beyond a reasonable doubt at the trial of this case.

> The Defendant Robert William Frazier is a native and citizen of the United States, born in or about November 1979 . . . .

> On or about December 24, 2012, a federal search warrant was executed at a residence in Anniston, Alabama. As a result of searching a cellular telephone from that location, two minor victims, MC No. 1 and MC No. 2 under the age of 12 years old were seen in visual depictions that depicted the children nude and were associated with lascivious communications between the target in Anniston, Alabama and unknown individuals. Further investigation of the individual depictions, including computer forensic examinations, determined that the images were produced in Dekalb County, Alabama between September 2010 and February 2013.

> On December 4th, 2014, special agents with Homeland Security Investigations traveled to DeKalb County to attempt to identify and rescue the two minor victims. DeKalb County Sheriff's Office and Alabama State Troopers assisted the HHI special agents. As a result of canvassing the area law enforcement were able to positively identify the two minor victims as being prepubescent minors under the age of 12 years old.

> On December 4th, 2013, law enforcement was also able to contact the Defendant Robert William Frazier in DeKalb County, Alabama within the Northern District of Alabama, who admitted to producing the nude visual depictions of the minor victims and sending them to the target in Anniston, Alabama. The Defendant voluntarily agreed to speak to law enforcement and then the Defendant confessed to producing the visual depictions and sending the visual depictions with his iPhone.

The Defendant admitted to meeting the target in Anniston, Alabama through a Craigslist advertisement and that he knew the target as Mike. The Defendant admitted to communicating with Mike about child sex and bestiality. The Defendant admitted to communicating with Mike via telephone text messages including sending Mike a link to a child sex story website. In addition the Defendant admitted to texting Mike, quote, I would love it if I could just have a little fun with my oldest daughter. I found a website that let's [sic] you read stories of child sex, and it's pretty intense stuff. The Defendant confirmed the identity of the two minor victims.

The Defendant admitted to video recording the two minor victims in various stages of undress in their bedrooms and bathrooms while they were changing clothes or preparing to enter the shower. The Defendant admitted forwarding the videos to Mike via text messages from his iPhone because having sex with children was something they both fantasized about in their communications. The Defendant stated that Mike and he had also communicated about conducting sex acts with each other in front of quote their girls.

The Defendant admitted to receiving a video from Mike via text message of a juvenile girl lying on a bed with her hands in her pants playing with herself simulating masturbation. The Defendant also admitted receiving the video from Mike that depicted the same aforementioned juvenile exiting the shower completely nude and a video of Mike masturbating a dog.

The Defendant identified multiple residences, all located in DeKalb County, where the Defendant produced child pornography images of the two minor victims by using his iPhone. The Defendant's iPhone was manufactured outside the State of Alabama and has previously traveled in interstate and foreign commerce. A preliminary forensic review of the Defendant's iPhone located additional evidence of the Defendant transporting, receiving and possessing images of child pornography.

For example, the Defendant used his iPhone to download and view images of child pornography from the Internet that depicted a prepubescent child under the age of 12 with an adult male penis touching her mouth while she holds onto the penis and that depict a prepubescent child being penetrated in her vagina by an adult male penis. The children depicted in the images downloaded to the Defendant's iPhone from the Internet are different children than those identified as MC No. 1 and MC No. 2.

Law enforcement agents seized and searched various computer media located in the Defendant's residence including but not limited to computer hard drives and storage devices and the Defendant's iPhone. A cursory review of the images located on the Defendant's iPhone, computer and/or hard drive indicated that there were images of child pornography produced, transported, received and possessed. The images of child pornography produced, transported, received and

possessed by the Defendant are of real children engaged in sexually-explicit conduct, including but not limited to actual or simulated sexual intercourse, masturbation and the lascivious exhibition of the genitals or pubic area of a person.

The images of child pornography received and possessed by the Defendant were produced in other states, other countries, and traveled in interstate and foreign commerce via the Internet. The images of child pornography produced by the Defendant were produced by an iPhone that was mailed, shipped or transported in or affecting interstate or foreign commerce by any means, including by computer. The images of child pornography produced by the Defendant were actually transported or transmitted using a means or facility of interstate or foreign commerce; to wit, the iPhone cellular telephone. Law enforcement agents seized and searched various computer media used by the Defendant; to wit, Apple iPhone 5 cellular telephone Model A–1533 -- and the serial number is enumerated; an iPhone 4 Model A1349 -- and again the serial number is enumerated; LG cellular telephone, Model US740 -- serial number is enumerated; a Dell Inspiron One computer with a service tag; Seagate external computer hard drive -- with the serial numbers enumerated; and a Dell USB device -- with another serial number -- to commit and promote the commission of violations of 18 United States Code Sections 2251 and 2252A.

Such conduct as outlined above, the transportation, receipt and possession of child pornography, would constitute violations of Title 18, United States Code, Sections 2252A(a)(1), (a)(2) and (a)(5)(B). The Defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the Defendant's sentence.

THE COURT: All right. Thank you, Mr. Fortune. Mr. Frazier, you have heard Mr. Fortune outline for me the evidence he would expect to prove at trial. He essentially read the Plea Agreement into the record so I know you have gone over that with your lawyer before as you've indicated to me. I need to ask you these questions. First, are those facts substantially correct?

THE DEFENDANT: Yes, sir.

THE COURT: Did you hear him say anything that was incorrect?

THE DEFENDANT: No, sir.

THE COURT: And did you do the things he says you did?

THE DEFENDANT: Yes, sir.

(*Id.* at 25-31).

At sentencing, the court calculated an advisory sentencing range of 360 months' to life imprisonment under the Sentencing Guidelines. (*Id.*, Doc. # 30 at 20). Petitioner was sentenced to a total sentence of 360 months' imprisonment, a sentence at the low end of the guideline range. (*Id.* at 50). The court imposed concurrent statutory maximum sentences of 240 months' imprisonment for Counts Seven and Eight, and a consecutive 120-month imprisonment sentence for Count Ten. (*Id.*). The court dismissed Counts One through Six and Count Nine on the Government's motion. (*Id.*).

Petitioner filed a timely notice of appeal. (*Id.*, Doc. # 22). Petitioner's trial counsel moved for the court to appoint appellate counsel on Petitioner's behalf. (*Id.* at 2). The court granted this motion and appointed the Federal Public Defender to represent Petitioner on appeal. (*Id.*, Doc. # 25). Following Petitioner's filing of a motion for voluntary dismissal, the Eleventh Circuit dismissed his appeal on December 9, 2014. (*Id.*, Doc. # 32).

Petitioner now raises three claims in his motion to vacate and one additional claim in his motion to amend. First, he asserts that he was denied the effective assistance of counsel because his trial attorney advised him that he would receive a sentence of no more than 20 years' imprisonment upon his plea of guilty. (Civil Docket, Doc. # 1 at 4). Second, he claims that trial counsel rendered ineffective assistance by failing to raise certain objections to the probation office's Sentencing Guidelines calculation and by failing to argue that the calculated guidelines range created a disparity between his sentence and the sentence of his co-defendant. (*Id.* at 5, 7-8). Third, he argues that he was denied the effective assistance of counsel on direct appeal because his appellate attorneys did not prosecute the direct appeal, despite his instructions that they do so. (*Id.* at 10). Finally, in his motion to amend the motion to vacate, Petitioner asserts that his trial counsel rendered ineffective assistance by advising him to plead guilty to two counts

that resulted in multiple punishments for the same offense.  (Doc. # 11 at 3).  The court addresses each claim below, in turn.

## II.     Discussion

A federal prisoner may file a motion to vacate his or her sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a). It is well settled that "to obtain collateral relief[,] a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982). Here, Petitioner seeks relief on the ground that he received ineffective assistance of counsel.

Ineffective assistance of counsel claims are governed by the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court established a two-prong test for adjudicating ineffective assistance of counsel claims; both prongs of the test must be met for a petitioner to succeed.  *Id.* at 687.  First, a petitioner must show that counsel's performance was deficient, *i.e.*, the performance was outside the range of professionally competent assistance.  *Id.*  The proper measure of an attorney's performance is "reasonableness under prevailing professional norms."   *Id.* at 688.  Unless a petitioner can rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," he or she cannot show that counsel's performance was constitutionally deficient.  *Id.* at 689.  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  [The court asks] only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."  *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992); *see also Waters v. Thomas*, 46 F.3d 1506,

1514 (11th Cir. 1995) (*en banc*) (stating that "perfection is not the standard of effective assistance").

Second, a petitioner must establish prejudice, such that there is a reasonable probability that, absent counsel's errors, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 687; *Chandler v. United States*, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (*en banc*). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A petitioner alleging prejudice resulting from his or her acceptance of a guilty plea must demonstrate a reasonable probability that he or she would have gone to trial rather than enter the plea, but for counsel's errors. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). And, the petitioner's decision to reject the plea would have to be "rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). Because Petitioner must meet both parts of the *Strickland* test, the court need not address the performance prong if he cannot meet the prejudice prong, and vice versa. *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000).

### A. Petitioner Has Not Demonstrated Any Prejudice He Suffered Due to Counsel's Pre-Plea Sentencing Estimates

To be sure, uncorrected "significant misleading statements of counsel" related to the length of a potential sentence that prompt a defendant to plead guilty can amount to ineffective assistance. *Cooks v. United States*, 461 F.2d 530, 532 (5th Cir. 1972).[2] But, that is not what occurred here. In this case, the court advised Defendant at the plea colloquy about his potential sentence, including its possible maximum and minimum.

---

[2] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

THE COURT: All right. What I want to do next is cover with you the statutory penalties that apply in this case, and just so you'll know, I'm only going to be covering Counts 7, 8 and 10. . . .

A violation of 18 United States Code Section 2252A(a)(1) carries with it a custodial term of not less than five years nor more than 20 years; a fine of not more than $250,000, a term of supervision of not less than five years up to life, and there would be a $100 assessment fee.

The guidelines and restitution apply to that count as well. Do you understand all that?

THE DEFENDANT: Yes, sir.

THE COURT: Count 8 carries with it a custodial sentence -- and that is the receipt allegation under 2252A(a)(2). That is also a custodial sentence of five to 20 years, and also a fine range of $250,000 and below, a term of supervision -- again, five years to life -- another $100 assessment fee, and restitution and the guidelines apply to that count as well. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And finally, Count 10, which alleges access or possession with the intent to view child pornography in violation of Section 2252A(a)(5) carries with it a custodial term of not more than ten years, a fine of not more than $250,000, a supervised release term of any term of years, five years to life, and a[n] assessment fee of $100.

And, again, restitution and the guidelines apply there as well. . . .

THE COURT: In light of the nature of the allegation and your possible plea to that allegation, admission of certain facts, that means the custodial term [for Count Ten] would be 0 to 20 years, not 0 to 10 years. Do you understand that?

THE DEFENDANT: Yes, sir.

(Criminal Docket, Doc. # 29 at 19-22).

Following that discussion, the court ensured that Petitioner understood the operation of

the Sentencing Guidelines and 18 U.S.C. § 3553:

THE COURT: And likewise the guidelines, although they are advisory and not mandatory, must be considered in sentencing you. So that's a starting point.

Have you talked with your lawyer about the guidelines and how they may apply to these subject offenses?

THE DEFENDANT: Yes, sir.

THE COURT: All right. And you understand that we will set a guideline range based upon the Presentence Report after resolving any objections that may be made to the report, and that will be one of the first things we do at the sentencing hearing.

But the key question in terms of your sentence is what a reasonable sentence is. That's defined statutorily, not by the guidelines. That is, a sentence that is sufficient but not greater than necessary to achieve the statutory purposes of sentencing.

And also I'll consider the factors that Congress says I must consider in deciding what a reasonable sentence is in this case. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Now, what I want to make sure you understand is this. If you get a guideline range different than you're expecting or a sentence that's higher than you're expecting, that would not give you the right to seek the withdrawal of the guilty plea that you're in the process of entering. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand the charges made against you and the ranges of punishment available for those charges?

THE DEFENDANT: Yes, sir.

(*Id.* at 23-24). In such a circumstance, a defendant generally cannot establish prejudice on an ineffective-assistance claim based on an erroneous sentence prediction. *See, e.g.*, *Harris v. United States*, 769 F.2d 718, 720-21 & n. 1 (11th Cir. 1985); *Krecht v. United States*, 846 F. Supp. 2d 1268, 1281 (S.D. Fla. 2012).

Most importantly for purposes of resolving this claim, the court ensured that Petitioner was pleading guilty because he was actually guilty of the charged conduct:

THE COURT:  Other than the Plea Agreement that we've talked about in some detail, has anyone made any promise or assurance to you to cause you to plead guilty in this case?

THE DEFENDANT:  No, sir.

THE COURT:  Has anyone threatened you or coerced you in any way to cause you to plead guilty in this case?

THE DEFENDANT:  No, sir.

THE COURT:  Are you pleading guilty because you're, in fact, guilty of these three charges made against you in the Indictment?

THE DEFENDANT:  Yes, sir.

(*Id.* at 24).  During its explanation of the factual basis for the charged offenses, the Government asserted that Petitioner had (a) "admitted to producing the nude visual depictions of the minor victims and sending them to the target in Anniston, Alabama" and (b) "admitted to video recording the two minor victims in various stages of undress in their bedrooms and bathrooms while they were changing clothes or preparing to enter the shower."  (*Id.* at 26-27).  Moreover, Petitioner stipulated to those facts and agreed that the court could use them to determine his sentence.  (*Id.* at 30).  Petitioner confirmed that the factual statements made by the Government were substantially correct and that he committed the conduct described by the Government.  (*Id.* at 31).

"[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."  *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).  "There is a strong presumption that the statements made during the [plea] colloquy are true."  *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).  Petitioner's sworn statements -- made in open court during his consent hearing in which he acknowledged his guilty plea was not induced by any promises or assurances, and that he understood that the sentence

imposed might be different from any estimate made by his attorney or anyone else -- preclude the relief he seeks. (Criminal Docket, Doc. # 29 at 23-24). Here, the court was crystal clear with Petitioner at his plea hearing. He was expressly told that a sentence higher than he was expecting would not permit him to withdraw his guilty plea. (Criminal Docket, Doc. # 29 at 23-24). In addition, he confirmed under oath that no promises or assurances, other than those in the plea agreement, induced him to plead guilty.[3] (*Id.* at 24). In fact, Petitioner stated under oath that he was pleading guilty because he was actually guilty of the crime he was charged with. (*Id.*). These statements refute Petitioner's assertion that his plea was induced by assurances from his counsel regarding his sentence and reflect that he entered his guilty plea fully aware of the possibility of a twenty-year imprisonment sentence on each of the three convictions.

Petitioner's argument that counsel provided ineffective assistance by misadvising him of the effect of the factual basis cuts no ice. (*See* Civil Docket, Doc. # 1-1 at 11-12 (alleging that counsel failed to inform Petitioner that he would waive his right to have facts determined by a jury and that the factual basis could be used to determine his sentence)). As explained above, the Government informed Petitioner during the plea colloquy that his factual proffer included admissions of producing child pornography and that those admissions could be used by the court during sentencing. (Criminal Docket, Doc. # 29 at 26-27, 30). Petitioner agreed that the Government's factual averments were substantially correct. (*Id.* at 31). In his plea agreement, he stipulated that the court could use the factual proffer during sentencing without additional fact-finding. (*Id.*, Doc. # 9 at 8). And, during the plea colloquy, Petitioner confirmed his understanding that he could not withdraw the plea if his guideline range was higher than expected. (*Id.* at 23-24). Thus, Petitioner has not established that his trial counsel's estimate of a

---

[3] In the plea agreement, the Government agreed to seek a three-point offense level reduction for acceptance of responsibility and to recommend a sentence within the guideline range. (Criminal Docket, Doc. # 9 at 8-9).

sentence range prejudiced him by inducing him to enter a guilty plea, and his first ineffective-assistance claim is due to be denied.[4]

**B.      Petitioner's Ineffective Assistance Claims Regarding Alleged Sentencing Errors are Meritless**

After careful review, the court concludes that Petitioner's ineffective assistance claims regarding trial counsel's performance at the sentencing stage provide no basis for habeas relief.

**i.      Analysis of Petitioner's Sentence Disparity Claim**

Petitioner argues that his trial counsel should have asserted a post-sentence objection to his custodial sentence based on the disparity between Petitioner's sentence and the sentence received by Michael Haynes. (Civil Docket, Doc. # 1-1 at 14-16). This claim is completely meritless.

In a sentencing memorandum, Petitioner's trial counsel argued that Petitioner should receive a downward departure from the Presentence Report's ("PSR") guideline range because Haynes, Petitioner's co-defendant, had been sentenced to 120 months' imprisonment for similar offenses. (Criminal Docket, Doc. # 12 at 1-2). Petitioner's counsel raised the disparity issue again during the sentencing hearing and contended that the court should depart from the calculated guideline range to avoid an unwarranted sentencing disparity, pursuant to 18 U.S.C. § 3553(a)(6). (*Id.*, Doc. # 30 at 36). Petitioner offered testimony from a special agent who investigated his offenses. (*Id.* at 23-24). The agent believed that Haynes had produced a pornographic video involving his daughter, but Haynes never confessed to producing it. (*Id.* at 25-26). In response, the prosecutor averred that Petitioner and Haynes were not similarly

---

[4]  Because Petitioner has failed to establish the prejudice prong, the court need not address any factual dispute regarding whether counsel misadvised Petitioner regarding the potential sentencing range. *Holladay*, 209 F.3d at 1248.

situated because the Government did not have enough evidence to prove beyond a reasonable doubt that Haynes had produced child pornography.  (*See id.* at 43-44).

Following the parties' arguments, the court expressly recognized the difficulty presented by the need to avoid unwarranted sentencing disparities:

> As it relates to Mr. Haynes, I cannot explain the sentence in light of the conduct, but what I do know is he wasn't charged with the full scope of the offense conduct that this defendant was, and particularly he was not charged with producing.  It may be old fashioned good luck that he had a set of circumstances that gave him some plausible deniability as to the production.
>
> Putting that aside, though, I can't disagree too much with the agent's view that these defendants match up in terms of their approach to abusing and misusing children, including their own.
>
> So what we are faced with, then, is kind of a collision course in this case between the Section 3553(a) factors, in particular, as the defendant argues, the need to avoid unwarranted sentence disparities among defendants and, as the Government has argued, the vile nature and circumstance of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment.
>
> The Court has fully considered a variance in this case and has the authority to impose a sentence other than the one called for by the guideline range, even at the low end of the guideline range.  However, I think a reasonable sentence in this case exists at the bottom of the guideline range.

(*Id.* at 49-50).

Petitioner's trial counsel fully and effectively presented the sentence-disparity issue to the court during sentencing.  Trial counsel raised the issue before sentencing, reiterated the request for a downward variance during sentencing, cited the statutory basis for the requested variance, and offered testimony to support the request.   He committed no error by refraining from reiterating the objection after the court imposed the sentence.  "[S]o long as a party states its objection to the sentence at some point during the sentencing hearing, its failure to repeat the objection at the conclusion of the imposition of sentence will not result in a waiver of that

objection." *United States v. Hoffer*, 129 F.3d 1196, 1202 (11th Cir. 1997). Because counsel effectively presented the sentence-disparity issue, this ineffective assistance claim is due to be denied.

Alternatively, even if Petitioner could demonstrate counsel's deficient performance with respect to this sentencing issue (and, to be clear, he cannot), Petitioner suffered no prejudice from counsel's failure to raise a duplicative objection to the court's denial of a downward variance. The court recognized the difficulty of avoiding an unwarranted sentence disparity in this case and explained why the Section 3553(a) factors supported a sentence at the low end of the guideline range.[5] (*See* Criminal Docket, Doc. # 30 at 49-50) (providing the court's reasons for the sentence). Given the court's lengthy consideration of the issue, repetition of the objection by counsel after the sentence was imposed would not have affected Petitioner's sentence.[6] Therefore, Plaintiff cannot show a reasonable probability that the outcome of sentencing would have been different if counsel had raised the sentence-disparity issue again.

_____

[5] Frankly, at the sentencing hearing, the court struggled with the application of Section 3553(a)(6) as it related to the individual with whom Petitioner was exchanging the child pornography, Haynes. The discussion about Michael Lee Haynes's sentence before another member of the court and its effect on Petitioner's sentence was a dominant theme highlighted and argued by Petitioner's counsel throughout Petitioner's sentencing hearing. There was testimony from the Government's agent about it, Petitioner's counsel raised it, and the court went "straight to [it]" when the Government presented argument on the appropriate sentence. (Criminal Docket, Doc. # 30 at 37). Haynes was not charged with or sentenced on a production count. It appears the Government certainly believed he produced pornography. (*Id.* at 37-38). But, he did not admit production and, because his phone was taken as part of a burglary, the Government conceded there was insufficient evidence to prove he produced. (*Id.* at 25). Haynes entered a Rule 11 binding plea that called for a sentence of 120 months (a 15 month variance below the low end of his Sentencing Guidelines range). (*Id.*). So, at the end of the day, the court was faced with a comparator not charged with production, who did not admit production, who entered a binding plea to distribution, receipt, and possession of child pornography, and was sentenced before another judge consistent with the plea agreement's sentence recommendation. That stands in stark contrast to Petitioner, who admitted to not only having discussions about raping a minor adopted daughter while distributing, receiving, and possessing child pornography (including images of his daughters), but also producing images of his adopted daughters and sharing them.

[6] The court is not convinced that trial counsel committed any error whatsoever by not objecting to the disparity between Petitioner's sentence and the random collection of sentences cited by Petitioner in his motion to vacate. (*See* Civil Docket, Doc. # 1-1 at 14-15). Petitioner's counsel focused on the most relevant disparity – the disparity between Petitioner's sentence and Haynes's sentence. Since counsel's effective presentation of that disparity did not persuade the court to grant a downward variance, Petitioner was not prejudiced in any respect by counsel's failure to present other, significantly less relevant disparities.

ii.    **Analysis of Petitioner's Claim Regarding the Cross-Reference in U.S.S.G. § 2G2.2**

Petitioner contends that trial counsel rendered deficient performance by failing to object to the court's application of a cross-reference in U.S.S.G. § 2G2.2(c) when calculating his base offense level.  (Civil Docket, Doc. # 1-1 at 16-18).  As with Petitioner's sentence-disparity claim, this claim misconstrues the facts and offers no basis for habeas relief.

Petitioner's PSR explained that the base offense level for Petitioner's offenses was determined by applying U.S.S.G. § 2G2.2.  (PSR ¶ 30).  However, the PSR recommended that the court apply a cross-reference to a guideline with a higher base offense level (U.S.S.G. § 2G2.1) because Petitioner's crimes "involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct."  (*Id.*) (referring to U.S.S.G. § 2G2.2(c)(1)).  Moreover, as the PSR noted, Petitioner's offenses involved the production of six units of child pornography as relevant conduct and that the separate incidents of production could not be grouped together for purposes of calculating a base offense level.  (*Id.*).

Petitioner's trial counsel objected to the PSR's base offense level on the ground that Petitioner had not produced pornography.  (Addendum to the Presentence Report; Criminal Docket, Doc. # 12 at 1).  Petitioner claimed that he had surreptitiously recorded the material and that it could not be considered "sexually suggestive or unnatural." (Criminal Docket, Doc. # 12 at 1).  The parties argued these objections at length during the sentencing hearing.  (*See id.*, Doc. # 30 at 2-19).  The court overruled Petitioner's objections to the base offense level.  (*Id.* at 19-20).  The court noted that Petitioner had "waived any right he may have for a jury determination of the facts" and had "admitted certain facts that bear upon the computation of his offense level under the guidelines."  (*Id.* at 20).  Significantly, in the plea agreement's factual proffer,

Petitioner had admitted "to producing" the videos at issue and sending them to another individual. (*Id.* at 17-18).

The record shows that Petitioner's trial counsel presented objections to the court's application of U.S.S.G. § 2G2.1 to determine Petitioner's base offense level. Petitioner complains that the court erred by not applying the factors articulated in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), to determine whether he produced sexually explicit material (*see* Civil Docket, Doc. # 1-1 at 17), but Petitioner's counsel cannot be faulted for that because he argued that the court should apply the *Dost* factors (*see* Criminal Docket, Doc. # 12 at 1). Petitioner also contends that the court should not have applied the cross-reference because he did not seek to have the minor victims engage in sexually explicit conduct. (*See* Civil Docket, Doc. # 1-1 at 16-17). This argument is belied by Petitioner's admission in his factual proffer that he had expressed a desire to sexually assault his older daughter and had "communicated about conducting sex acts" with his co-defendant in front of their children. (Criminal Docket, Doc. # 29 at 27). Additionally, Petitioner has not provided binding authority that would have supported an objection to the court's application of the cross-reference. It is well settled that "counsel is not required to anticipate changes in the law" to provide effective advocacy for a defendant. *See, e.g.*, *Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1326 (11th Cir.), *cert. denied*, 137 S. Ct. 505 (2016). The record simply refutes Petitioner's claim that counsel rendered deficient performance, and this ineffective-assistance claim is due to be denied.

Alternatively, Petitioner has not shown that he was prejudiced by counsel's failure to present any specific objection to the court's application of the cross-reference in U.S.S.G. § 2G2.2. Indeed, Petitioner's trial counsel presented almost all of the arguments raised in this motion to vacate against the application of the cross-reference, but those arguments failed. To

the extent Petitioner claims counsel should have argued that he did not seek to have minors engage in sexually explicit conduct, that objection would have failed because Petitioner admitted to proposing a sexual assault of the minors in his communications with the co-defendant.

Moreover, the court could have applied U.S.S.G. § 2G2.1 to determine Petitioner's base offense level based on his stipulations to the court without applying the cross-reference in U.S.S.G. § 2G2.2.  Under the Sentencing Guidelines, "[a] plea agreement (written or made orally on the record) containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s)."  U.S.S.G. § 1B1.2(c).  Petitioner's admissions that he had produced videos of minors "in various stages of undress in their bedrooms and bathrooms while they were changing clothes or preparing to enter the shower" and had sent them to his co-defendant were admissions of using a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction.  (*See* Criminal Docket, Doc. # 9 at 5).  *Cf.* 18 U.S.C. § 2251(a).  Based on the stipulations in the factual proffer, the court would have been justified in applying U.S.S.G. § 2G2.1 to determine Petitioner's base offense level.  For these reasons, the court finds no reasonable probability of a different sentence if Petitioner's trial counsel had made any of Petitioner's proposed objections to the application of the cross-reference in U.S.S.G. § 2G2.2.

### iii.    Analysis of Petitioner's Claim Regarding "Double Counting" of Relevant Conduct

Petitioner next contends that his trial counsel should have objected to the court's application of a multiple count adjustment.  (Civil Docket, Doc. # 1-1 at 18-20).  According to Petitioner, the PSR incorrectly designated the six dismissed charges as relevant conduct and incorrectly applied the cross-reference in U.S.S.G. § 2G2.2 to determine the base offense level for each of those charges.  (*Id.* at 19).  Petitioner complains that the PSR should not have counted

the six dismissed charges to determine the multiple-count adjustment, pursuant to U.S.S.G. § 3D1.4. (*Id.*). The court disagrees.

Petitioner's trial counsel did not render deficient performance with regard to this claim because the claim appears to have been foreclosed by Eleventh Circuit law. In *United States v. Moore*, the Eleventh Circuit considered whether a court erred by applying an adjustment to a defendant's offense level under Section 3D1.4 to account for fourteen unindicted bank robberies that the defendant admitted to during the plea colloquy. 6 F.3d 715, 717 (11th Cir. 1993), *superseded by rule in part on other grounds as recognized in United States v. Summers*, 176 F.3d 1328, 1330 (11th Cir. 1999). In *Moore*, the Eleventh Circuit recognized that, under U.S.S.G. § 1B1.2(c), a defendant's stipulation to committing an additional offense during a guilty plea is treated as a conviction for an additional count charging that offense. *Id.* at 718-19 (quoting U.S.S.G. § 1B1.2(c)). The *Moore* court held that a district court must consider unconvicted offenses as additional counts of conviction when conducting a guideline calculation if the offenses are stipulated to in the plea agreement. *Id.* at 719-21.

Here, Petitioner stipulated to producing multiple videos of "the two minor victims in various stages of undress in their bedrooms and bathrooms while they were changing clothes or preparing to enter the shower." (Criminal Docket, Doc. # 9 at 5). As such, he stipulated to multiple violations of 18 U.S.C. § 2251(a), and the court was obligated to consider the stipulated violations as convictions for purposes of calculating a multiple-count adjustment. *See Moore*, 6 F.3d at 719-21. Any doubts about the number of production violations committed by Petitioner were resolved by the PSR, which specifically stated that Petitioner produced at least six distinct videos. (PSR ¶ 22). Petitioner admitted to the accuracy of this information, for purposes of sentencing, by raising no objection to paragraph 22 of the PSR. (*See* Criminal Docket, Doc. #

12; Addendum to the Presentence Report (objecting to the PSR's characterization of the videos and its claim that Petitioner had "produce[d]" them, but not to Petitioner's creation of the videos)).  *See also United States v. Williams*, 438 F.3d 1272, 1274 (11th Cir. 2006).

Perhaps it could be said that this case is distinguishable from *Moore* on the basis that Petitioner did not stipulate to a specific number of production offenses.  But, Petitioner has not referred to any binding case law which makes such a distinction.  Accordingly, in light of the *Moore* opinion, it was reasonable for Petitioner's trial counsel to believe that the PSR's multiple-count adjustment was appropriate, and his failure to object to the adjustment "did not fall outside the wide range of professionally competent counsel."[7]  *Hutcherson v. United States*, 425 F. App'x 801, 803 (11th Cir. 2011) (holding that a petitioner's counsel did not provide ineffective assistance, in part, because the Eleventh Circuit had never held that the petitioner's prior offense was not a crime of violence).  For this reason, Petitioner's ineffective assistance claim concerning the multiple-count adjustment is due to be denied.[8]

### C.    Petitioner has Not Demonstrated that Appellate Counsel Performed Deficiently or that Appellate Counsel's Performance Prejudiced Him

In his motion to vacate, Petitioner contends that his appellate counsel rendered deficient performance by filing a motion to voluntarily dismiss his appeal despite his instructions to

---

[7]  The court observes three practical realities that weigh strongly against this ineffective assistance claim. First, although a creative attorney might have recognized a plausible challenge to the PSR's multiple-count adjustment, sentencing counsel need not find and raise every plausible guideline objection to provide effective assistance to a federal defendant.  After all, "perfection is not the standard of effective assistance."  *Waters*, 46 F.3d at 1514.  Second, even if Petitioner's sentencing counsel had successfully objected to Petitioner's multiple-count adjustment and reduced Petitioner's guideline range, Petitioner's vile conduct weighed heavily against a sentence at the lower end of such a guideline range.  Indeed, the court weighed the aggravating sentencing factors in Petitioner's case against the sentence disparity presented by counsel and concluded that a 360-month custodial sentence was "justified in this case" as "sufficient but not greater than necessary to achieve the statutory purposes of sentencing because of the, frankly, disgusting conduct that occurred in this case."  (Criminal Docket, Doc. # 30 at 50-51). Third, Petitioner's counsel faced a hard road in defending Petitioner's case due to the disgusting conduct he committed and his confessions to law enforcement.

[8]  Because Petitioner has failed to establish the deficient performance prong, the court need not resolve any dispute over whether the alleged guideline calculation error prejudiced Petitioner.  *Holladay*, 209 F.3d at 1248.

prosecute the appeal. (*See* Civil Docket, Doc. # 1-1 at 20-24). Petitioner concedes that appellate counsel advised him that the appeal lacked merit and suggested that he file a motion to vacate. (*Id.* at 21). Petitioner avers that he was confused about the direct appeal procedure but did not intend to waive his appeal rights. (*Id.*). The court finds no basis for awarding habeas relief on this claim.

First, Petitioner's ineffective assistance claim against appellate counsel fails to allege what specific performance of his appellate counsel was deficient. Petitioner seeks to extend case law addressing an attorney's failure to file a notice of appeal after a defendant has requested an appeal to be filed. (*See id.* at 21-22) (citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). But, Petitioner cannot dispute that his trial counsel filed a timely notice of appeal. (Criminal Docket, Doc. # 22). Trial counsel also requested that the court appoint appellate counsel for Petitioner (*Id.* at 2), and the court appointed the Federal Public Defender to represent Petitioner on appeal (Criminal Docket, Doc. # 25). By Petitioner's own account, his appellate counsel did not abandon him; rather, counsel advised him that the appeal lacked merit. (Civil Docket, Doc. # 1-1 at 21). When Petitioner's mother informed appellate counsel about his confusion, counsel sent Petitioner a letter, which explained that he should sign a waiver form to dismiss the appeal. (*Id.* at 34). Counsel asked for a signed waiver "[t]o confirm that this is your decision." (*Id.*). In his reply brief, Petitioner concedes that he signed a form to dismiss his appeal but claims that the signature was involuntary due to his confusion about the appropriate procedure for obtaining judicial review of his claims. (*Id.*, Doc. # 10 at 7). However, this concession demonstrates that, by dismissing the appeal, Petitioner's appellate counsel followed Petitioner's "express instructions with respect to an appeal." *Cf. Roe*, 528 U.S. at 478 ("If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a

professionally unreasonable manner only by failing to follow the defendant's express instructions."). Because Petitioner's appellate counsel consulted with him and followed his express written instructions, Petitioner's appellate counsel provided constitutionally sufficient representation to him.

Second, Petitioner's ineffective assistance claim against appellate counsel fails to allege that the advice provided by counsel prejudiced him. As explained above, Petitioner seeks to extend *Roe* so that he is not required to "show[ ] that the appeal would have merit." (Civil Docket, Doc. # 1-1 at 21). But, *Roe* applied a less rigorous prejudice standard because the failure to file a notice of appeal deprived the petitioner "of the appellate proceeding altogether." *Roe*, 528 U.S. at 483. The court is not convinced that *Roe*'s prejudice standard should be extended to this situation, where Petitioner was appointed appellate counsel, appellate counsel analyzed the strength of Petitioner's claims, counsel met with Petitioner and informed him the appeal was meritless, and counsel proposed an alternative procedure for obtaining judicial review. Appellate counsel correctly advised Petitioner that the proposed claims were meritless. (*See* Criminal Docket, Doc. # 22 at 1-2) (outlining the claims Petitioner wished to raise on appeal). As explained above, Petitioner has not provided a viable basis for challenging the voluntary nature of his plea agreement.[9] The Eleventh Circuit would not have reviewed his ineffective assistance claims on direct appeal because the claims were not presented to this court and no factual record had been produced by this court. *See, e.g.*, *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002) (asserting that the Eleventh Circuit "will not generally consider claims of ineffective assistance of counsel raised on direct appeal where the district court did not

---

[9] Indeed, his challenges to his plea agreement are contradicted by his sworn testimony that (a) he understood he could not withdraw the plea if his guideline range was higher than expected, (b) he was pleading guilty because he was actually guilty of the charges, and (c) nothing explained to him during the plea colloquy caused him to reconsider his decision to enter the plea. (Criminal Docket, Doc. # 29 at 24, 32-33).

entertain the claim nor develop a factual record").  Moreover, Petitioner's challenges to the court's application of the Sentencing Guidelines would not have been considered by the Eleventh Circuit in light of Petitioner's appeal waiver.[10]  *See, e.g.*, *United States v. Banks*, 350 F. App'x 419, 420 (11th Cir. 2009) (declining to review the application of a Sentencing Guidelines enhancement because the defendant waived the right to contest the district court's guideline calculation).  Because counsel correctly determined that Petitioner's appeal lacked merit, Petitioner cannot show a reasonable probability of a different result if counsel had continued to prosecute his appeal.

For the reasons explained above, Petitioner has failed to demonstrate appellate counsel's deficient performance or a reasonable probability of a different result if his appeal had been prosecuted to a final decision.  This ineffective assistance claim is due to be denied.

### D. Petitioner was Not Prejudiced by Counsel's Alleged Failure to Inform Him of a Double Jeopardy Issue Prior to Entering the Plea

In his amendments to the motion to vacate, Petitioner claims that trial counsel provided ineffective assistance by failing to advise him that his guilty plea to Counts Eight and Ten of the indictment exposed him to "multiple punishments for the same criminal offense."  (Civil Docket, Doc. # 11 at 3).  Petitioner states that possession of child pornography is a lesser included offense of receipt of child pornography and that Counts Eight and Ten were based on the same events.  (*Id.* at 3-4).

---

[10]    Petitioner's claim that his appeal waiver "was entered unknowingly [ ] and unintelligently" is contradicted by his sworn testimony during the plea colloquy.  (*See* Civil Docket, Doc. # 1-1 at 21).  The Eleventh Circuit enforces appeal waivers where the "district court specifically questioned the defendant about the waiver during the plea colloquy."  *United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir. 2005).  During Petitioner's plea colloquy, the court questioned Petitioner about the appeal waiver and stated that the waiver would preclude further judicial review unless a specific exception applied to a claim.  (Criminal Docket, Doc. # 29 at 17-18).  Petitioner confirmed that he understood the waiver, that he had decided for himself to enter into the waiver, and that his best interests were served by entering into the waiver.  (*Id.* at 18).

Petitioner relies on *United States v. Bobb*, 577 F.3d 1366 (11th Cir. 2009), to argue that Counts Eight and Ten were multiplicitous counts. (*See id.*). In *Bobb*, the Eleventh Circuit held that the criminal prohibition on receipt of child pornography in 18 U.S.C. § 2252A(a)(2)(B) proscribes the same conduct as the prohibition on possessing child pornography in 18 U.S.C. § 2252A(a)(5)(B). 577 F.3d at 1373. This is so because a person who receives an item necessarily must possess the item. *Id.* The Eleventh Circuit determined that the possession offense is a lesser-included offense of the receipt offense. *Id.* at 1374-75. Nevertheless, it affirmed the defendant's convictions for receiving child pornography and possessing child pornography because (1) the indictment charged the defendant with receiving child pornography and possessing child pornography on different dates; and (2) the trial evidence proved that the defendant received seven files of pornography on one date and possessed over 6,000 additional images on a later date. *Id.* at 1375.

As an initial matter, the court is not convinced that Petitioner's convictions on Counts Eight and Ten are actually multiplicitous convictions, particularly in light of Petitioner's admissions in the factual proffer. Petitioner admitted to receiving and possessing two videos of a juvenile sent by his co-defendant. (Criminal Docket, Doc. # 9 at 5-6). Petitioner's receipt conviction under Count Eight could be attributed to receiving one of the videos, while his possession conviction under Count Ten could be attributed to possessing the second video. Although the indictment could have included additional allegations to clearly distinguish Counts Eight and Ten, the court is not convinced that Petitioner's trial counsel missed a lurking double jeopardy violation in representing him in connection with the plea Petitioner entered. Rather, the court believes that Petitioner pled to one receipt count and one possession count to avoid a double jeopardy issue. To the extent that the court is uncertain about the existence of a double

jeopardy issue due to the lack of a complete factual record, that uncertainty works against Petitioner's claim. *See Premo v. Moore*, 562 U.S. 115, 132 (2011) ("The added uncertainty that results when there is no extended, formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance.").

More importantly, Petitioner has not alleged in this proceeding that he would have gone to trial and refused the plea if counsel had informed him about the alleged double jeopardy issue. (*See generally* Civil Docket, Docs. # 11, 12). Thus, this ineffective assistance claim fails as a matter of law. *Lafler*, 566 U.S. at 163 (requiring a petitioner to show a reasonable probability that he or she would have declined a plea offer to demonstrate prejudice from an improvidently accepted plea). Nor can the court conclude that Petitioner could have rationally declined the plea offer if trial counsel had informed him about the double jeopardy issue. *Cf. Padilla*, 559 U.S. at 372. By pleading guilty, Petitioner avoided any possible conviction for producing child pornography. He also avoided a mandatory minimum 15-year sentence for producing child pornography. *See* 18 U.S.C. § 2251(e). The Government held overwhelming evidence of Petitioner's guilt on all charges, as he had confessed to producing child pornography, sending it to his co-defendant, and receiving pornography from the co-defendant. (*See* Criminal Docket, Doc. # 9 at 4-6). The Government also had physical evidence to corroborate Petitioner's confession.[11] (*See id.* at 6) (describing the material found on Petitioner's cell phone). Finally, Petitioner received a three-level offense level reduction for acceptance of responsibility; without this reduction, Petitioner's guideline range would have been life imprisonment. (*See* PSI ¶¶ 88-92) (reducing Petitioner's total offense level from 45 to 42); U.S.S.G. § 5A, Sentencing Table.

---

[11] The court observes that Petitioner has not disavowed any of the criminal conduct he admitted to in entering his plea. *See Cedeno v. United States*, 455 F. App'x 241, 245 (3d Cir. 2011) (concluding that a petitioner's "failure to disavow [certain] charges supports the Government's contention that he would have been convicted had the case gone to trial").

Because Petitioner received substantial benefits from his plea and the government held overwhelming evidence of his factual guilt, the court finds that Petitioner would not have made a rational decision to go to trial and forego the plea offer, even if he had been informed of the double jeopardy claim asserted in these proceedings.[12]

###    E.    Petitioner is Not Entitled to an Evidentiary Hearing

A petitioner under Section 2255 is entitled to an evidentiary hearing if he alleges "reasonably specific, non-conclusory facts that, if true, would entitle him to relief." *Aron v. United States*, 291 F.3d 708, 715 n. 6 (11th Cir. 2002). The court need not hold an evidentiary hearing if a petitioner's claims are "affirmatively contradicted by the record" or "patently frivolous." *Id.* The court does not need to hold an evidentiary hearing to resolve Petitioner's ineffective assistance claims because they are contradicted by the record. Specifically, Petitioner's claim that trial counsel induced his plea by providing an inaccurate estimate of the ultimate sentence is contradicted by the plea colloquy. Petitioner's claims that trial counsel performed deficiently by failing to object to the sentence disparity or to the court's application of the cross-reference in U.S.S.G. § 2G2.2 are squarely contradicted by the sentencing transcript. Petitioner's own admissions about his interactions with appellate counsel show that they provided adequate assistance to him. Finally, Petitioner's claims related to alleged double counting of relevant conduct and a double jeopardy issue do not provide a basis for relief, even after the assertions in Petitioner's filings are accepted as true.

---

[12] To the extent Petitioner seeks to raise a double jeopardy claim against his convictions on Counts Eight and Ten in this action, Petitioner waived such a claim by entering his guilty plea. *See United States v. Bonilla*, 579 F.3d 1233, 1240-41 (11th Cir. 2009) (explaining that a guilty plea waives all non-jurisdictional claims against a conviction, including double jeopardy claims that do not present a situation where the government was constitutionally prohibited from prosecuting the individual on a charge). Petitioner has not demonstrated that the Government was unable to prosecute him for separate counts of receiving child pornography and possessing child pornography at the time of the plea. *See id.* at 1241 (stating that a double jeopardy challenge to a plea agreement must be reviewed under the record that existed at the time of the plea agreement). As explained above, Petitioner admitted to receiving and possessing two pornographic videos of a minor sent by his co-defendant. The Government could have used one video to support Count Eight and the other video to support Count Ten.

### III.     Conclusion

Petitioner's ineffective assistance of counsel claims fail on the merits. Therefore, Petitioner's motion to vacate (Civil Docket, Docs. # 1, 11-12) is due to be denied without an evidentiary hearing. A separate order consistent with this opinion will be entered.

**DONE** and **ORDERED** this April 14, 2017.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE